AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

MIHAI CRISTEA,

Defendants

Case No.   2:23-mj-00981-duty

LODGED
CLERK, U.S. DISTRICT COURT
3/2/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___jb___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
March 2, 2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CLD___ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of March 1, 2023, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1029(a)(2) | Use of unauthorized access devices |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Todd W. Bratz
Complainant's signature

Todd W. Bratz, USSS Supervisory Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   March 2, 2023

Judge's signature

City and state:   Los Angeles, California

Hon. Alka Sagar, U.S. Magistrate Judge
Printed name and title

AUSA: David W. Williams (x8485)

## AFFIDAVIT

I, Todd W. Bratz, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against Mihai CRISTEA ("CRISTEA") for a violation of 18 U.S.C. § 1029(a)(2) (use of unauthorized access devices).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF AFFIANT

3. I am an Assistant to the Special Agent in Charge, a Supervisory Special Agent position, in the Criminal Investigative Division of the United States Secret Service ("USSS"). I have been so employed with these titles and that of Special Agent ("SA") since September 20, 2004. As an SA with the USSS, I am a "federal law enforcement officer" empowered under the authority of 18 United States Code Section 3056. I graduated from the Federal Law Enforcement Training Center in Glynco, Georgia and the U.S. Secret Service Special Agent Training Course in Beltsville, Maryland. I have also attended

numerous trainings and briefings throughout my career on the conduct of criminal investigations involving financial crimes.

4.  My criminal investigative responsibilities include the investigation of Fraud and Related Activity in Connection with Access Devices (Title 18 United States Code, Section 1029) and other related offenses.  As a Special Agent, I have received training on how people use access devices to commit crimes and understand the law enforcement techniques that can be utilized to investigate and disrupt such activity.  In the course of my investigations and other cases on which I have worked, I have gained experience executing warrants on physical premises, conducting physical surveillance, reviewing evidence including financial records, and interviewing victims, witnesses, and suspects.

### III. SUMMARY OF PROBABLE CAUSE

5.  Between August 2022 and January 2023, the California Department of Social Services ("DSS") has detected more than $38.9 million in stolen funds from victim Electronic Benefit Transfer ("EBT") cards.  Much of this fraud is from two specific programs known as CalFresh and CalWORKs, which help low-income households pay for housing, food, and other necessary expenses. Many of the fraudulent withdrawals are done at specific ATMs in the Central District of California.

6.  For example, between on or about January 1, 2023, and on or about January 5, 2023, more than approximately $117,000 was withdrawn from ATMs at a single financial institution branch located in Toluca Lake, California in Los Angeles County.  The

unauthorized withdrawals conducted during these five days and at this single bank branch affected approximately 152 victim EBT cardholders. The dates of these withdrawals coincided with the disbursement by DSS of CalFresh and CalWORKs benefits to EBT cardholders.

7. Law enforcement has also reviewed ATM surveillance provided by financial institutions that administer EBT accounts that relate to the fraud scheme at issue. During the unauthorized ATM withdrawals, suspects can often be seen holding stacks of cards and conducting withdrawals from multiple accounts in quick succession at one ATM.

8. On or about March 1, 2023, at approximately 07:35 a.m. (PST), law enforcement conducted physical surveillance at a Citibank ATM terminal located at 7119 Topanga Canyon Blvd, Canoga Park, CA, which was identified by DSS as one of the top ATM locations for EBT fraud. CRISTEA arrived on foot and proceeded to the ATM terminal located at the Citibank branch where law enforcement was conducting surveillance. At the ATM, law enforcement observed, and Citibank confirmed that, CRISTEA withdrew cash from the ATM in rapid succession using approximately 4 different access devices, totaling an amount in excess of $1,000. CRISTEA was arrested and found to possess 4 access devices.

## IV. STATEMENT OF PROBABLE CAUSE

9. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.    Regulatory Background of CalFresh and CalWORKs Programs**

10.  DSS is a government agency that administers several benefit and assistance programs for residents of the state of California.  One of the assistance programs administered by DSS is called CalFresh (formerly known as food stamps), which helps low-income households purchase food and household items to meet their nutritional needs.  Another assistance program administered by DSS is called CalWORKs, which helps low-income families with children pay for housing, food, and other necessary expenses.

11.  Residents of California that meet the criteria established by the CalFresh or CalWORKs programs can apply online for benefits at www.getcalfresh.org and www.benefitscal.com.  Beneficiaries apply for benefits by submitting their income and number of dependents to determine their benefit eligibility.

12.  CalFresh and CalWORKs benefits are issued through Electronic Benefit Transfer cards ("EBT cards").  EBT cards are mailed to an address designated by the account holder and function like traditional debit cards to conduct transactions.  For example, you can use an EBT card to make a purchase at a grocery or convenience store by swiping the card at a point-of-sale terminal.

13.  The EBT cards issued under CalFresh and CalWORKs are assigned specific Bank Identification Numbers ("BIN").  A BIN refers to the first five digits of the account number on a debit

or credit card and can be used to identify the issuer of the card, like DSS, which administers the CalFresh and CalWORKs programs.

14. Benefits received through the program are typically disbursed to EBT cardholders by DSS during the early days of each month. Those benefits are deposited directly from DSS into the account of the EBT cardholder.

15. The EBT cardholders can then conduct cash withdrawals at automated teller machines ("ATMs") using a personal identification number ("PIN") established by the card holder. The EBT cardholder presents the card at an ATM, inserts the card into the ATM card reader, and utilizes a PIN to withdraw the funds previously deposited by DSS intended for beneficiaries of the CalFresh or CalWORKs programs.

  **B. Background on EBT Fraud in the Los Angeles Area and Prior State and Federal Operations**

16. Since in or about August 2022, local law enforcement has been working with DSS to investigate a significant increase in unauthorized cash withdrawals utilizing EBT cards. Based on analysis of victim complaints to DSS, victim complaints to local law enforcement, bank records, and surveillance, law enforcement determined that the majority of the unauthorized cash withdrawals were being conducted with cloned cards.

17. A cloned card can be a blank white plastic card or another debit, credit or gift card that contains altered information on the card's magnetic stripe. Based on my training and experience, I know that suspects will often clone cards by

taking stolen card information from a victim card's magnetic stripe and re-encode that stolen information onto another card's magnetic stripe.  Cloning these cards allows the suspect to use the card and the DSS benefits added on to the account linked to the card for illicit purchases or unauthorized cash withdrawals.

    18.  On a legitimate debit or credit card, the information coded on the card's magnetic stripe will match the information embossed on the front of the card.  This information includes the account number, expiration date, and cardholder's name, among other information.  Whereas on a cloned card, the information coded on the magnetic stripe will not match the information embossed on the front of the card.  For example, if a suspect re-encodes victim EBT card information onto a pre-existing gift card's magnetic stripe or a blank white plastic card with a magnetic stripe, the magnetic stripe will be coded with the EBT card information, but the card itself will still bear the information of the gift card or bear no information if it is a blank white plastic card.

    19.  Based on my training, experience, and participation in this investigation, I know that the victim card data harvested to clone cards is often obtained from what is colloquially referred to as "skimming activity."

    20.  The term "skimming" is used to describe activity that involves unlawfully obtaining debit and credit card information by using technological devices to surreptitiously record victim accountholder's debit and credit card numbers and personal identification numbers at, for example, ATMs or point-of-sale

terminals. For example, individuals conducting ATM "skimming" may install a skimming device into the card reader of the ATM to record the debit or credit card numbers, as well as a camera or keypad overlay on the ATM keypad to record the associated PIN number. Those individuals will then return to the ATM to collect the card number and PIN information stored on the installed device.

21. As described above, suspects then manufacture cloned and fraudulent debit or credit cards that bear the victim accountholder's account information that was obtained from skimming. Once that information is loaded onto another fraudulent card (e.g., a gift card or blank plastic card), members of the scheme then use that fraudulent card to withdraw cash from the victim accountholder's bank accounts or to make purchases with the victim accountholder's account.

22. In or about September 2022, local law enforcement conducted a surveillance and arrest operation in the Los Angeles, California area. This operation was planned in response to the large number of unauthorized withdrawals occurring at ATMs in the Los Angeles area during a short period of time. Specifically, law enforcement had analyzed fraudulent EBT withdrawal data and noticed a high volume of unauthorized withdrawals on specific dates and times that coincided with the dates when the majority of benefits are disbursed to EBT cardholders.

23. As a result of this operation, local law enforcement established surveillance at select ATMs that were used to

conduct a significant volume of EBT fraud. Law enforcement surveilled those ATMs around the dates when benefits had been disbursed, observed suspects that withdrew a high volume of unauthorized withdrawals and that conducted those withdrawals in rapid succession, and arrested multiple individuals believed to be making fraudulent withdrawals of EBT benefits. As a result, law enforcement arrested approximately 16 suspects. All of the arrested suspects were later determined to be citizens of countries other than the United States who did not have documentation to be lawfully present in the United States. All of the individuals arrested were released from local custody within hours of their arrest and absconded from any future judicial proceedings.

24. In or about February 2023, in response to a further increase in unauthorized cash withdrawals utilizing EBT cards after the local law enforcement September 2022 operation, federal law enforcement conducted a similar surveillance and arrest operation in the Los Angeles, California area. Law enforcement established surveillance around the dates when benefits had been disbursed at select high-volume EBT fraud ATMs. Law enforcement arrested three suspects that withdrew a high volume of unauthorized withdrawals and that conducted those withdrawals in rapid succession. Two of those defendants came to the ATM together, possessed 35 cloned EBT cards at the time of arrest, and later analysis of historic ATM surveillance data showed that they had made more than $190,000 in past attempted fraudulent EBT withdrawals from a single bank since October

8

2022.  One additional defendant possessed 269 cloned EBT cards at the time of arrest, and later analysis of historic ATM surveillance data showed that the defendant had made more than $70,000 in past attempted fraudulent EBT withdrawals from a single bank since January 2023.  All three of these defendants were determined to be citizens of Romania, who did not have documentation to be lawfully present in the United States.  The three arrested defendants were ordered detained pending trial by the Hon. Karen Stevenson and Hon. Margo A. Rocconi.  A federal grand jury returned two indictments against the three defendants for bank fraud, in violation of 18 U.S.C. § 1344; aggravated identity theft, in violation of 18 U.S.C. § 1028A; use of unauthorized access devices, in violation 18 U.S.C. § 1029(a)(2); and possession of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3), in 23-CR-0076-FLA and 23-CR-0077-JFW.

      C.    **Background of Current Operation to Combat EBT Fraud**

    25.  Data provided by DSS, based in part upon reported fraud by victims, reported fraud to local law enforcement, bank records, and surveillance indicates that as of in or about January 2023, there has been approximately $71.3 million in stolen funds from victim EBT cards.

    26.  For the previous six months, between in or about August 2022 and in or about January 2023, in the Central District of California and elsewhere, more than approximately $38.9 million has been stolen from victim EBT cards.  The

majority of these funds were stolen through unauthorized ATM withdrawals.

27. Between on or about January 1, 2023, and on or about January 5, 2023, more than approximately $7.2 million was stolen from victim EBT cards largely through unauthorized ATM withdrawals. Of the approximately $7.2 million stolen from victim EBT cards in the beginning of January 2023, more than approximately $2.9 million was stolen, almost entirely through unauthorized ATM withdrawals, in Los Angeles County alone.

28. For example, between on or about January 1, 2023, and on or about January 5, 2023, more than approximately $117,000 was withdrawn from ATMs at a single financial institution branch located in Toluca Lake, California in Los Angeles County. The unauthorized withdrawals conducted during these five days and at this single bank branch affected approximately 152 victim EBT cardholders. The dates of these withdrawals coincided with the disbursement by DSS of EBT benefits, including CalFresh and CalWORKs.

29. Based upon my training and experience conducting access device fraud investigations, I know that suspects committing access device fraud schemes will often target particular BINs when harvesting stolen card information collected from skimming devices. Thus, suspects using skimming may target the BIN associated with DSS, in essence, targeting CalFresh and CalWORKs benefits. Moreover, based upon my training and experience, the sheer volume of unauthorized ATM withdrawals occurring during the early days of the month is

10

further indicative that suspects participating in the fraud scheme at issue are targeting EBT cards because benefits are typically disbursed to EBT cardholders during the early days of each month.

30. Law enforcement has also reviewed ATM surveillance provided by financial institutions that administer EBT accounts that relate to the fraud scheme at issue. During the unauthorized ATM withdrawals, suspects can often be seen holding stacks of cards and conducting withdrawals in quick succession at one ATM. Based upon my training and experience, I know that suspects perpetrating access device fraud schemes will often conduct unauthorized withdrawals using cloned cards in rapid succession at ATMs.

31. Based upon the rapid succession of unauthorized ATM withdrawals being conducted, the fact that the cards being used to conduct the unauthorized cash withdrawals are nearly all cloned EBT cards, and the fact that nearly all of the unauthorized withdrawals are happening during the early days of the month, I believe that suspects participating in the fraud scheme at issue are ostensibly targeting EBT cards.

### D. Mihai CRISTEA Committed EBT Fraud Using Unauthorized Access Devices on March 1, 2023

32. Based upon the large dollar amount being stolen from victim EBT cards, the number of victims impacted, the concentration of unauthorized ATM withdrawals occurring in particular areas, and the large number of unauthorized ATM withdrawals occurring at singular bank locations, law

enforcement conducted a surveillance and arrest operation in March 2023.

33. On or about March 1, 2023, law enforcement was conducting physical surveillance at various bank and ATM locations throughout Los Angeles County, including a Citibank ATM terminal located at 7119 Topanga Canyon Blvd, Canoga Park, CA ("Citibank ATM"), which was identified as one of the top ATM locations in Los Angeles for EBT fraud.  Based on DSS fraud data, surveillance was conducted beginning at approximately 4:30 a.m.

34. DSS reported to law enforcement that the CalFresh benefits had been disbursed into the EBT accounts at approximately 12:00 a.m. on March 1, 2023.

35. During this surveillance, law enforcement observed an unknown individual, later identified as CRISTEA, arrive on foot and approach the Citibank ATM at approximately 07:35 a.m.  Law enforcement observed CRISTEA approach the Citibank ATM walking North on Topanga Canyon Blvd.

36. After CRISTEA approached the Citibank ATM, law enforcement observed CRISTEA conduct multiple transactions which appeared to be withdrawals based upon law enforcement observing CRISTEA retrieve what appeared to be currency at the conclusion of each transaction.  CRISTEA appeared to conduct several withdrawal transactions in rapid succession while law enforcement observed for approximately 6 minutes. CRISTEA appeared to insert several different cards to conduct withdrawals, and put the retrieved currency and cards in his

pocket on multiple occasions. Based upon my training and experience, individuals conducting legitimate transactions at ATMs typically conduct a single transaction and do not transition between multiple payment cards rapidly to conduct several transactions in a short period of time.

37. While CRISTEA was at the Citibank ATM, law enforcement learned from Citibank that a withdrawal transaction took place on an EBT account belonging to an individual named J.H., whose address registered with the US Department of Agriculture is in Tracy, CA. It should be noted that this address is approximately 300 miles away from the Citibank ATM. At the ATM, CRISTEA then made approximately 3 additional transactions on EBT accounts belonging to additional victims, totaling approximately $4,000.

38. Based on the date, time, ATM location, presence of multiple, and successive ATM withdrawals on multiple EBT cardholder accounts during a short time period, law enforcement detained CRISTEA in order to investigate further.

39. CRISTEA had approximately 4 cloned EBT cards in his jacket pocket. The cloned cards consisted of a variety of re-encoded prepaid cards and gift cards. The cards also had stickers placed on them with what appeared to be, based on my training and experience, card balances and victim PINs.

40. Law enforcement confirmed these were cloned EBT cards linked to EBT accounts that belonged to other individuals, not CRISTEA. Moreover, the cloned cards also were affixed with stickers bearing victim PIN numbers that corresponded to each

13

cloned card and were needed in order to conduct the unauthorized ATM withdrawals.

41. CRISTEA also had approximately $4,000 in cash in his pockets, which was close in value to the approximately $4,000 in total unauthorized ATM withdrawals CRISTEA conducted that morning. Citibank ATM surveillance photographs obtained by law enforcement also depicted CRISTEA at the ATM conducting the unauthorized withdrawals using cloned EBT cards and corroborated law enforcement's surveillance observations.

42. When asked to identify himself, CRISTEA provided the name Mihai CRISTEA and failed to produce any identifying documents. A search of CRISTEA's person incident to arrest also yielded no identifying documents.

43. Based on my review of law enforcement database records, no domestic criminal history or driver's licenses were identified. In addition, no travel or immigration records were identified for the name and date of birth provided by CRISTEA. However, Romanian law enforcement confirmed CRISTEA's identity and indicated that, in 2015, he received an eight-month sentence in the United Kingdom for theft. Domestic law enforcement records have also confirmed that CRISTEA is unlawfully present in the United States.

44. Based on my training and experience, I know that individuals conducting access device fraud schemes will often conceal their true identities and enter the country illegally to evade detection by law enforcement.

14

45. CRISTEA was arrested, read his Miranda warning, and declined to speak with law enforcement.

## V. CONCLUSION

46. For all of the reasons described above, there is probable cause to believe that CRISTEA has committed a violation of 18 U.S.C. § 1029(a)(2) (use of unauthorized access devices).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this __2nd__ day of
March, 2023.

_____
THE HONORABLE ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE